**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ODALIS HERNANDEZ DE ALFARO AND JUANA MOLINA,**<br>    *Plaintiffs,*<br><br>**v.**<br><br>**PANTHER II TRANSPORTATION, INC., PANTHER PREMIUM LOGISTICS, INC. AND BRIAN KEITH MOORER,**<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. H-4:22-CV-02619** |

---

**DEFENDANTS PANTHER II TRANSPORTATION, INC. AND BRIAN KEITH MOORER'S MOTION TO STRIKE, EXCLUDE, OR LIMIT PLAINTIFF'S EXPERT TESTIMONY REGARDING MEJIA'S LIFE CARE PLAN**

---

Respectfully submitted,

**COOPER & SCULLY, P.C.**

By: */s/ Jillian H. Ginger*

    **WILLIAM F. ALLRED**
    State Bar No.: 01104550
    Email: William.Allred@cooperscully.com
    **CLARISSA A. PRICE**
    Texas Bar No. 24082450
    Email: Clarissa.Price@cooperscully.com
    **JILLIAN H. GINGER**
    Texas Bar No. 24137469
    Email: Jillian.Ginger@cooperscully.com

    Founders Square
    900 Jackson Street, Suite 100
    Dallas, Texas 75202
    Phone: 214.712.9500
    Fax: 214.712.9540

    **ATTORNEYS FOR DEFENDANTS PANTHER II TRANSPORTATION, INC. AND BRIAN KEITH MOORE**

1072105v.2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. II

I.    NATURE AND STAGE OF THE PROCEEDING.............................................................. 1

II.    ISSUES TO BE RULED UPON AND STANDARD OF REVIEW ................................. 2

III.    SUMMARY OF THE ARGUMENT ..................................................................... 2

IV.    FACTUAL BACKGROUND ................................................................................. 3

    *A.    Mejia's Injuries* ................................................................................. 3

    *B.    Mejia's Life Care Plan* ........................................................................ 5

V.    ARGUMENTS AND AUTHORITIES ....................................................................... 6

    *A.    Requirements for Relevant and Reliable Expert Testimony* ......................... 6

        1.    Admissibility Under Federal Rule of Evidence 702 ............................ 6

        2.    Relevance ........................................................................................ 7

        3.    Reliability ........................................................................................ 7

    *B.    Sellars' Methodology is Unreliable* .................................................... 9

        1.    Sellars' Methodology has not Been Peer Reviewed ........................... 9

        2.    Sellars' Life Care Plan is Based on Insufficient Evidence .................. 10

        3.    Sellars Fails to Explain the Basis for His Opinions .......................... 12

    *C.    The Life Care Plan is Speculative and Irrelevant* ................................. 13

        1.    Sellars has not proven that Mejia's damages and resulting future medical care were caused by the accident ........................................................................... 13

        2.    Sellars' Opinions are Speculative and not Supported by the Medical Records........ 14

    *D.    Davenport's Present Value Assessment is Inadmissible because The Life Care Plan is Inadmissible* ................................................................................................. 16

VI.    CONCLUSION.................................................................................................. 16

VII.    PRAYER.......................................................................................................... 17

i

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                     Page(s)

*Black v. Food Lion, Inc.*,
   171 F.3d 308 (5th Cir. 1999) ................................................................................................ 8

*Brown v. Illinois Cent. R. Co.*,
   705 F.3d 531, 536 (5th Cir. 2013) ..................................................................................... 8, 9

*Carreon v. King*,
   No. 3-15-CV-2089-K-BK, 2016 WL 9525670
   (N.D. Tex. June 13, 2016) .................................................................................9, 11-13, 15-16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ........................................................................................2, 7-9, 16

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136, 147 (1997) ....................................................................................................... 8

*Hale v. Gannon*
   1:11-cv-277-WTL-DKL, 2012 WL 3866864
   (S.D. Ind. Sept. 5, 2012) ................................................................................................ 13, 14

*Hopey v. Spear*, 13-CV-,
   2016 WL 9665159 (C.D. Ill. April 18, 2016) ............................................................... 13

*Huss v. Gayden*,
   571 F.3d 442, 452 (5th Cir. 2009) ........................................................................................ 6

*In re Air Crash Disaster at New Orleans, La.*,
   795 F.2d 1230, 1233-34  (5th Cir. 1986) ............................................................................ 7, 16

*In re Paoli R.R. Yard PCB Litigation*,
   35 F.3d 717, 745 (3d Cir. 1994) ........................................................................................... 8

*Mathis v. Exxon Corp.*,
   302 F.3d 448, 459-60 (5th Cir. 2002) ................................................................................... 6

*McClain v. Metabolife Int'l, Inc.*,
   401 F.3d 1233, 1245 (11th Cir. 2005) ................................................................................... 8

*Metzler v. XPO Logistics, Inc.*,
   No. 4:13-CV-278, 2014, 2014 WL 7146108
   (E.D. Tex. Dec. 15, 2014) ................................................................................................ 6, 8

1072105v.2

*Minix v. Canarecci*,
   597 F.3d 824, 835 (7th Cir. 2010) ........................................................................... 12

*Paz v. Brush Engineered Materials, Inc.*,
   555 F.3d 383, 388 (5th Cir. 2009) ............................................................................. 8

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239, 245 (5th Cir. 2002) ..................................................................... 7-8, 16

*Queen v. W.I.C., Inc*
   14-CV-519-DRH-SCW, 2017 WL 3872180
   (S.D. Ill. Sept. 5, 2017) ........................................................................................... 12

*Watkins v. Telesmith, Inc.*,
   121 F.3d 984, 990 (5th Cir. 1997) ............................................................................. 8

## Rules

FED. R. EVID. § 403 .............................................................................................................. 2

FED. R. EVID. § 702 ................................................................................................... 2, 6, 7, 9

1072105v.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ODALIS HERNANDEZ DE ALFARO AND JUANA MOLINA, | § § § | |
| *Plaintiffs*, | § | |
| v. | § § | Civil Action No. H-4:22-CV-02619 |
| PANTHER II TRANSPORTATION, INC., PANTHER PREMIUM LOGISTICS, INC. AND BRIAN KEITH MOORER, | § § § § § | |
| *Defendants*. | § | |

**DEFENDANTS PANTHER II TRANSPORTATION, INC. AND BRIAN KEITH MOORER'S MOTION TO STRIKE, EXCLUDE, OR LIMIT PLAINTIFF'S EXPERT TESTIMONY REGARDING MEJIA'S LIFE CARE PLAN**

**TO THE HONORABLE JUDGE ROSENTHAL:**

**COMES NOW**, Panther II Transportation, Inc. ("Panther"), and Brian Keith Moorer ("Moorer") (collectively the "Defendants") and files this Motion to Strike, Exclude, or Limit the testimony of Plaintiff's Experts regarding Mejia's Life Care Plan.

## I.　NATURE AND STAGE OF THE PROCEEDING

1.　This is a personal injury lawsuit, in which Plaintiff asserts various negligence claims relating to a motor vehicle incident that occurred on March 3, 2022.[1] Plaintiffs allegedly sustained injuries from this incident and brought claims against Defendants for negligence and gross negligence.[2] Defendants filed a Motion for Summary Judgment on Plaintiffs' gross negligence claims and claims of negligent hiring, training, entrustment, supervision, retention, and monitoring.[3]

---

[1] *See* Dkt. 1.
[2] *Id*.
[3] *See* Dkt. 29.

2.      On January 27, 2023, Plaintiff Molina Mejia designated several experts including two experts from physician Life Care Planning, Christopher Sellars and William Davenport.[4] Davenport was deposed on March 11, 2024.[5] Sellars was deposed on March 13, 2024.[6]

3.      This case is on the trial docket for June 10, 2024.

## II.    ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

4.      Defendants ask the Court to rule upon the admissibility of testimony by Plaintiff Mejia's proposed experts William Davenport and Christopher R. Sellars, D.O. under Rules 403 and 702 of the Federal Rules of Evidence, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and progeny.

## III.    SUMMARY OF THE ARGUMENT

5.      Plaintiff Mejia's life care plan and testimony related to the life care plan is inadmissible because it is unreliable and irrelevant to the decision the fact finder must make in this case. Sellars' opinions are unreliable because his report sets forth numerous recommendations that are unsupported by the medical records generated by Mejia's treating physicians and he fails to explain the basis for any additional treatment recommendations and valuations. Further, any "basis" Sellars relies on is thin: he did not perform an in-person examination, he did not speak to Mejia's treating physicians, and he did not run any independent diagnostic testing to support his claims.

6.      To be admissible, all of the care deemed necessary by Sellars' must also be causally linked to the incident on March 3, 2022. Sellars did not review any records or evidence in order to form an expert opinion that Mejia's alleged injuries are causally linked to this incident. Sellars admitted that he did not know whether Mejia had previously exhibited

---

[4] Ex. A, Plaintiff Mejia's Expert Designation (APP_001-APP_006).
[5] Ex. B, Davenport Deposition taken on March 11, 2024 (APP_007-APP_015).
[6] Ex. C, Sellars Deposition taken on March 13, 2024 (APP_016-APP_044).

symptoms of any of the diagnostic conditions before the accident. He did not review any photographs of the vehicles involved in the incident or the damage caused to the vehicle involved in the incident. He did not review the police report.

7.      In addition, Sellars did not review Mejia's pertinent and relevant medical records from the date of the incident. Despite all of those limitations, Sellars opined that Mejia would require "lifelong medical care" to treat her "physical, behavioral, and psychological impairments" caused by the incident.[7]

8.      Sellars' opinion is no more than an *ipse dixit* and is unsupported by the medical records, the minimal impact that occurred from the incident, and his own report.

## IV.      FACTUAL BACKGROUND

### A.      Mejia's Injuries

9.      On March 3, 2022, Plaintiff Odalis Hernandez De Alfaro was driving a food truck in the far right lane of the Katy Freeway and Plaintiff Juana Molina Mejia ("Mejia") was the passenger.[8] To the left of Plaintiffs, Defendant Moorer was driving a trailer owned by Defendant Panther.[9] When Moorer attempted to change lanes into the far right lane he came into contact with Plaintiffs' left corner bumper causing scratched on the back of the truck.[10] Mejia was wearing her seatbelt and airbags did not deploy.[11] After the incident, Mejia was able to exit the truck and walk around on her own.[12] Police arrived on the scene approximately 45 minutes after

---

[7] Ex. D, Life Care Plan, p. 30 (APP_077).
[8] *See* Dkt. 1.
[9] *Id*.
[10] *Id*.
[11] Ex. E, Mejia Deposition taken on May 10, 2003, at 47:4-6 (APP_200), 49:6-13 (APP_201), 50:4-7 (APP_202).
[12] *Id.* at 52:10-13 (APP_203).

the accident.[13] Mejia did not request an ambulance.[14] Mejia reported to the police officers that she was uninjured.[15] Mejia had no loss of consciousness.[16]

10.     Mejia testified that she went to a hospital on the date of the accident and had x-rays taken of her back and foot.[17] Sellars did not review these records.[18] Sellars does not know whether Mejia had any bruising, lacerations, hematoma, or concussion diagnosis on the date of the incident.[19]

11.     On March 11, 2022, eight days after the accident, Mejia went to another facility for evaluation and treatment of injuries allegedly caused by the incident.[20] The doctor at this facility found Mejia did not have any radiating pain or objective neurological deficit.[21] Over seven months later, on October 14, 2022, Mejia started chiropractic care.[22]

12.     Sellars states, "Mejia is able to perform the same type of work-related tasks for the same amount of time as she was prior to the injury."[23] Mejia testified that her only daily activities that have been altered since the incident is that she no longer goes to the park or rides her bicycle, and Sellars' report states that Mejia is able to independently complete all activities of daily living.[24] Additionally, Sellars' report says Mejia is capable of sitting, standing, or walking for three hours and capable of pushing, pulling, lifting, and carrying up to ten pounds.[25]

---

[13] *Id.* at 54:5-7 (APP_205).
[14] *Id.* at 53:15-18 (APP_204).
[15] Ex. F, Police Report, p. 1 (APP_213).
[16] Ex. D at p. 9 (APP_056).
[17] Ex. E at 67:10-12 (APP_206); 70:25-71:10 (APP_207-APP_208).
[18] Ex. C at 37:21-39:13 (APP_029-APP_030).
[19] *Id.* at 46:24-47:6 (APP_034-APP_035), 47:24-48:7 (APP_035-APP_036).
[20] Ex. D at p. 8 (APP_055).
[21] *Id.*
[22] *Id.* at p. 9 (APP_056).
[23] *Id.* at p. 22 (APP_069).
[24] Ex. E at 102:18-103:3 (APP_209-APP_210), Ex. D at p. 19 (APP_066).
[25] Ex. D at p. 22 (APP_069).

### B.    Mejia's Life Care Plan

13.    Mejia retained Physician Life Care Planning ("PLCP") to prepare a life care plan in this case.[26] PLCP assigned Christopher Sellars, D.O. to prepare the life care plan in this case.[27] Sellars is a Certified Life Care Planner, Board Certified in Physical Medicine & Rehabilitation, and Certified in Sports Medicine.[28] Sellars is not a medical doctor.[29] He has never practiced medicine in Texas and does not have any hospital privilege in Texas.[30] Sellars has never examined Mejia in person, and he is not her treating physician.[31] He is not a treating orthopedic surgeon, neurologist, or psychiatrist.[32] Sellars did not do any type of independent evaluation or review of Mejia's healthcare records from prior to the incident.[33] There is no evidence that the PLCP employee who summarized Mejia's medical records had any medical training.[34] That employee then sent the summary to Sellars for his review and preparation of Mejia's life care plan.[35]

14.    The life care plan prepared by PLCP and Sellars predicted a nominal value of $926,796.50 for Mejia's future medical care through age 83.[36] The present value assessment, likewise prepared and provided by PLCP and signed by PLCP president William Davenport, predicts the future value of Mejia's care to be $2,100,749.00 and the present value to be $966,944.00.[37]

---

[26] Ex. C at 34:6-19 (APP_026).
[27] *See* Ex. C at 34:6-18 (APP_026); Ex. D (APP_045).
[28] Ex. D at p. 3 (APP_050).
[29] Ex. C at 6:11-14 (APP_019), 8:10-13 (APP_021).
[30] *Id.* at 15:4-5, 15:21-23 (APP_022).
[31] *Id.* at 43:23-24 (APP_032); 76:24-77:1(APP039-APP_40).
[32] *Id.* at 79:12-19 (APP_040).
[33] *Id.* at 79:20-80:2 (APP_040-APP_041), 80:4-9 (APP_041).
[34] *Id.* at 34:6-19 (APP_028).
[35] *Id.*
[36] Ex. D at p. 1 (APP_048), 30 (APP_077).
[37] Ex. G, Present Value Assessment, p. 1 (APP_221)

15.     Sellars' life care plan asserts that Mejia suffers from ten diagnostic conditions which led to purported disabilities.[38] The plan then identified aleged "future medical requirements."[39]

16.     Sellars report states that Mejia was not using Assistive Devices, Equipment, or Supplies.[40] Further, he noted that she is independently mobile with bathing, meal preparation, eating, dressing, bowel and bladder management, medication management, and comunication abilities.[41] Despite these findings, Sellars concluded that Mejia would incur thousands of dollars in equipment & supply costs.[42]

17.     Sellars does not know what vehicle Mejia was in at the time of the incident and did not review photographs from the incident or the police report.[43]

## V.     ARGUMENTS AND AUTHORITIES

### A.     Requirements for Relevant and Reliable Expert Testimony

#### 1.     *Admissibility Under Federal Rule of Evidence 702*

18.     A federal court sitting in diversity applies the Federal Rules of Evidence to determine the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Whether an expert is qualified to testify is a question of law." *Metzler v. XPO Logistics, Inc.*, No. 4:13-CV-278, 2014 WL 7146108, at *1 (E.D. Tex. Dec. 15, 2014) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002)). Federal Rule of Evidence 702 was recently "amended to clarify and emphasize that expert testimony may not be admitted unless the *proponent* demonstrates to the court that it is more likely than not that the proffered testimony

---

[38] Ex. D at p. 26-27 (APP_073-APP_074).
[39] *Id.* at p. 31-35 (APP_078-APP_082).
[40] *Id.* at p. 21 (APP_068).
[41] *Id.* at p. 19 (APP_066).
[42] *Id.* at p. 135 (APP_182).
[43] *See id.* at p. 17 (APP_064); Ex. C at 46:7-9 (APP_034).

**DEFENDANTS' MOTION TO STRIKE, EXCLUDE, OR LIMIT**
**PLAINTIFF MEJIA'S LIFE CARE PLAN**                                                    **Page 6**
**1072105v.2**

meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, advisory committee's note to 2023 amendment (emphasis added). The district court must make a preliminary fact finding that "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993).

### 2.    *Relevance*

19.    For an expert's testimony to be relevant, it must be helpful, meaning, it must "assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations omitted). An expert's opinion that is not supported by sufficient evidence will not assist a reasonable juror to conclude the expert's proposition is more likely to be true than false. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002). As to helpfulness, "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233-34 (5th Cir. 1986).

### 3.    *Reliability*

20.    To determine whether an expert's testimony is sufficiently reliable, the court must consider whether (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "In *Daubert*, the Supreme Court offered an illustrative, but not an exhaustive, list of factors that district courts may use in evaluating the reliability of expert testimony. These factors include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its

operation; and (4) is generally accepted in the relevant scientific community." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). The factors apply "to all types of expert testimony, not just scientific testimony." *Pipitone*, 288 F.3d at 244.

21.     "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of [his] methodology. The expert's assurances that he has utilized generally accepted [principles] is insufficient." *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal citations omitted). "When evaluating *Daubert* challenges, courts focus 'on [the expert's] principles and methodology, not on the conclusions that [the expert] generate[s].'" *Metzler*, 2014 WL 7146108, at *1 (citing *Daubert*, 509 U.S. at 594.). Further, "[w]here an expert's opinion is based on insufficient information the analysis is unreliable. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

22.     "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony must "adhere to the same standards of intellectual rigor that are demanded in their professional work." *Watkins v. Telesmith, Inc.*, 121 F.3d 984, 990 (5th Cir. 1997). Mere possibility, speculation, and surmise are insufficient. *Black v. Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999). Any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible. *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005).

## B.     <u>Sellars' Methodology is Unreliable</u>

23.     The proponent of the expert bears the burden of establishing that the expert's testimony is the product of reliable principles and methods *and* that the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *Carreon v. King*, No. 3-15-CV-2089-K-BK, 2016 WL 9525670 (N.D. Tex. June 13, 2016). Here, Sellars' methodology is not reliable and the methodology has not been reliably applied to the facts of the case.

### 1.     *Sellars' Methodology has not Been Peer Reviewed*

24.     Independent testing, peer review, and publication of the methodology is a pertinent and important reliability consideration. *Daubert*, 509 U.S. at 593. Sellars claims that the methodology he employs in his life care plan is based on the "Tenets, Methods, and Best Practices" of the AAPLCP, but he has not produced any evidence that this methodology has actually been peer reviewed.[44]

25.     Sellars testified that the only time his life care plans were peer-reviewed is while he was getting his certification as a life care planner from PLCP.[45] However, peer review of certain life care plans to secure a certification is not the same thing as independent peer-review and testing of the underlying methodology. Sellars "bears the burden of furnishing some objective, independent validation of [his] methodology" but he has not furnished any such evidence. *See Brown*, 705 F.3d at 536 (5th Cir. 2013).

26.     The life care plan at issue in this case was not reviewed by anyone other than Sellars and the life care plan was not independently peer reviewed.[46] In addition, Sellars failed to consult with Mejia's treating physicians or ask for their review of the plan to see if the treatment

---

[44] Ex. C at 24:19-20 (APP_023); *see* Ex. D at p. 1 (APP_048).
[45] Ex. C at 32:6-13 (APP_024).
[46] Ex. C at 33:16-23 (APP_025).

in the plan was accurate according to their diagnosis.[47] The lack of peer review, Mejia's physician review and approval, and independent testing weighs against admissibility.

### 2. *Sellars' Life Care Plan is Based on Insufficient Evidence*

27.     Sellars' opinions in the life care plan are based on insufficient information and are therefore unreliable and inadmissible. Specifically, Sellars is not Mejia's doctor and has never provided her with any medical care.[48] To determine Mejia's diagnostic conditions and consequent circumstances, Sellars' relied on an incomplete set of Mejia's medical records and a single video interview.[49] Sellars did not conduct an in-person examination of Mejia.[50] Instead, Sellars "examined" Mejia over video which prevent Sellars from performing any manual muscle testing, palpation, reflexes, sensory testing, or pulse checks.[51] Sellars did not order any diagnostic tests.[52] Moreover, ***Sellars did not contact or consult with any of Mejia's treating providers***.[53]

28.     When preparing the Life Care Plan Product, Dr. Sellars relied only on the medical records provided by the Plaintiff.[54] In fact, PLCP allows the attorney that retains them to determine the scope of the relevant information and does not request any additional information.[55] Though a physician *can* reach out to a Plaintiff's treating physician to obtain additional records, in this case, Sellars did not find it necessary to do so even though he was

---

[47] *Id.*
[48] *Id.* at 8:10-13 (APP_021), 43:23-24 (APP_032); 76:24-25:1 (APP_039).
[49] *Id.* at 37:21-39:13 (APP_029-APP_031), 43:16-17 (APP_032), 43:21-24 (APP_032); Ex. D at p. 18 (APP_065).
[50] Ex. C at 43:21-44:4 (APP_032-APP_033).
[51] *Id.*; Ex. D at p. 25 (APP_072).
[52] *See* Ex. D (APP_045).
[53] Ex. C at 35:17-36:7 (APP_027-APP_028).
[54] *Id.* at 35:12-20 (APP_027).
[55] Ex. B at 13:4-20 (APP_011).

**DEFENDANTS' MOTION TO STRIKE, EXCLUDE, OR LIMIT**
**PLAINTIFF MEJIA'S LIFE CARE PLAN**                                                    **Page 10**
**1072105v.2**

missing records from the date of the incident and agreed that it would have been beneficial to his analysis.[56]

29.    In the *Carreon v. King* case, the Northern District of Texas found a life care planner's opinions, which were similar to ones made by Sellars' in this case, were not the product of reliable principles and methods. NO. 3-15-CV-2089-K-BK, 2016 WL 9525670, at *3. (N.D. Tex. June 13, 2016). In that case, the court found the life care planner did not have an adequate foundation for her opinion that the plaintiff would need to take all of the medications described by the life care plan for the rest of the plaintiff's life. *Id.* at *2. No doctor had prescribed the medications for the rest of the plaintiff's life. *Id*. No doctor opined that the plaintiff would need the medications for the rest of her life. *Id*. The life care planner did not speak to any of the plaintiff's health care providers about the medications and whether the plaintiff would need them for the rest of her life. *Id.* at *3. As such, the life care planner's testimony and report regarding future medication costs was found to be scientifically invalid and could not be properly applied to the facts at issue in that case. *Id.* at *3.

30.    In this case, Sellars opinions have less evidentiary support than in the *Carreon* case. Sellars opines that Mejia will require extensive care and treatment that is unsupported by any doctor's recommendation, despite failing to evaluate her medical records from the date of the incident, failing to speak to Plaintiff's treating providers, failing to examine Mejia in person, and failing to conduct any diagnostic testing.[57] Like the life care planner in *Carreon*, Sellars opines that Mejia will need to be on an several medications for the rest of her life despite the fact

---

[56] Ex. C at 35:17-25 (APP_027), 81:22-23 (APP_042).
[57] Ex. C at 35:21-36:7 (APP_027-APP_028), 43:25-44:4 (APP_032-APP_033), 46:24-47:3 (APP_034-APP_035); *See* Ex. D (APP_045).

there is no recommendation in the medical records that supports this finding.[58] *See Carreon*, 2016 WL 9525670, at *2.

31.    In addition, Sellars' opinions directly contradict his own findings within the report as well as Mejia's medical records. For example, one part of his report states Mejia is able to perform the same types of work-related tasks for the same amount of time as she was prior to her injury along with sit, stand, and walk for three hours, and she has the capability to push, pull, lift, and carry up to ten pounds.[59] Then another part of his report states Mejia is disabled and unable to perform household services and has decreased physical and cognitive functions affecting her ability to perform job duties at work.[60] This is an example of some of the report's obvious inaccuracies which point to the report's lack of evidentiary support and unreliability.

32.    Sellars' testimony and report should be excluded because it is not the product of reliable principles, methods, or evidence.

### 3.    *Sellars Fails to Explain the Basis for His Opinions*

33.    "An expert must explain the methodology and principles supporting his opinion, and that opinion must amount to 'more than a bottom line.'" *Queen v. W.I.C., Inc.*, 14-CV-519-DRH-SCW, 2017 WL 3872180, *4 (S.D. Ill. Sept. 5, 2017) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). In *Queen v. W.I.C.*, the court excluded a life care planner's testimony because the expert's life care plan failed to explain the basis for his additional treatment recommendations and valuations. *Id.*

34.    Similarly, Sellars' report simply sets forth recommendations without explaining the basis for his opinions. Specifically, Sellars does not explain how he determines what services are necessary, what data he relies on, and how he determines the duration and frequency of each

---

[58] Ex. C at 6:11-14 (APP_019), 8:10-13 (APP_021); Ex. D at p. 108 (APP_155).
[59] Ex. D at p. 22 (APP_069).
[60] *Id.* at p. 27 (APP_074).

**DEFENDANTS' MOTION TO STRIKE, EXCLUDE, OR LIMIT**

treatment.[61] Because Sellars' methodology is essentially just a "bottom line" conclusion, he has failed to demonstrate that his methodology is reliable.[62]

### C.      The Life Care Plan is Speculative and Irrelevant

35.      The life care plan must help the trier of fact determine the damages actually attributable to this incident. *Hopey v. Spear*, 13-CV-2220, 2016 WL 9665159, at *3 (C.D. Ill. April 18, 2016). In addition, Plaintiff must show that each item of treatment listed on the life care plan is necessary and are specifically grounded in Plaintiff's treating medical doctor's opinions. *See Carreon*, 2016 WL 9525670; *Hale v. Gannon*, 1:11-cv-277-WTL-DKL, 2012 WL 3866864, *5 (S.D. Ind. Sept. 5, 2012).

#### 1.      *Sellars has not proven that Mejia's damages and resulting future medical care were caused by the accident*

36.      To the extent that any of Sellars' opinions regarding future medical care include services that Plaintiff would have needed before the accident, his opinions are irrelevant because they do not help the trier of fact determine the measure of damages attributed to the incident at issue in this case. *See Hopey*, 2016 WL 9665159 at * 3.

37.      In *Hopey v. Spear*, the court excluded a life care planner's testimony about the costs of future physical therapy because the treating physician (on whose recommendation the life care planner relied) did not provide the life care planner "with medical support for her attribution of costs of physical therapy due to the accident." *Id*.

38.      Sellars claims that all of Mejia's "future medical requirements" are "specifically attributable to the medical conditions which resulted from Mejia's motor vehicle accident."[63] However, Sellars' conclusory statement, without more, is an insufficient basis to support his

---

[61] *See* Ex. D (APP_045).
[62] *See id*.
[63] *Id.* at p. 5 (APP_052).

**DEFENDANTS' MOTION TO STRIKE, EXCLUDE, OR LIMIT**
**PLAINTIFF MEJIA'S LIFE CARE PLAN**                                                    **Page 13**
**1072105v.2**

claim that the damages were caused by the incident, especially considering the extremely limited nature of Sellars' review and his lack of information regarding the incident and minor damages to the vehicle caused by the incident.

39.     In addition, Sellars failed to review records from the date of the incident to see whether Mejia had any bruising, concussion symptoms, hematoma, lacerations, or other injuries on the date of the incident.[64] He also had no medical records or knowledge of Mejia's pre-accident medical history besides knowing she had a hysterectomy.[65] In fact, Sellars' life care plan states that Mejia "denies any prior medical history."[66] However, this broad statement is clearly inconsistent with at least one other note in Sellars' life care plan, which states that Mejia had a history of headaches before the incident.[67] Critically, Sellars admitted that he did not know whether she had symptoms of *any of the diagnostic conditions* before the incident.[68]

40.     Sellars' testimony and opinion that all of Mejia's injuries are "specifically attributable" to this incident are unreliable considering his complete lack of knowledge regarding the incident itself; lack of knowledge regarding any of Mejia's earlier medical history; his limited review of only some of Mejia's medical records; his failure to request or seek out the medical records from the day of the accident; his failure to do an in person examination of Mejia; and his failure to speak with any of Mejia's treating physicians.

### 2.    *Sellars' Opinions are Speculative and not Supported by the Medical Records*

41.     Proving the necessity of treatment is "a significant hurdle to the helpfulness of the life care plan." *Hale*, 2012 WL 3866864 at *5. It is the plaintiff's burden to prove the projected

---

[64] Ex. C at 39:3-13 (APP_031), 46:24-48:7 (APP_034-APP_36).
[65] *Id.* at 80:4-9 (APP_041).
[66] Ex. D at p. 20 (APP_067).
[67] *Id.* at p. 21 (APP_068).
[68] Ex. C at 71:23-72:9 (APP_037-APP_038).

**DEFENDANTS' MOTION TO STRIKE, EXCLUDE, OR LIMIT**
**PLAINTIFF MEJIA'S LIFE CARE PLAN**                                                    **Page 14**
**1072105v.2**

medical treatments are specifically grounded in the plaintiff's treating medical doctor's opinions. *See Carreon*, 2016 WL 9525670; *Hale*, 2012 WL 3866864, \*5. If Sellars' projected treatments are not supported by Plaintiff's treating medical doctor's opinions, then they are inadmissible and Sellars' projected cost of the treatment is irrelevant. *See id.*

42.    Sellars' recommended duration of care is unsupported by any doctor's recommendation or Sellars' own expertise. For example, Sellars opines that Mejia will need to be on an antidepressant for the rest of her life.[69] This is the single largest cost in the plan and equates to over 1/3 of the total predicted costs, totaling $366,331.68.[70] However, Sellars is not a psychiatrist or a neurologist that can assess and prescribe this type of medication, and there is no recommendation in the medical records that suggests Mejia will need to be on this medication for the rest of her life. In addition, Sellars' opinion that Mejia be on this specific, high cost medication directly contradicts the information found in Mejia's medical records which show her doctor, Dr. Kalidindi, actually prescribed Mejia a generic version of this medication which would total less than $10,000.00 if taken as Sellars asserts it will need to be taken.[71]

43.    Sellars further opined that Plaintiff will require *lifelong care* for multiple other care needs, including: physical medicine & rehabilitation/pain management four times yearly for the first ten years, then three times yearly for the next thirty-four years, psychiatrist, MRI brain scans five times yearly for thirty-nine years, X-Rays and MRIs of the cervical spine, shoulder, lumbar spine, knee, foot/ankle for forty-four years, daily dose of Tylenol, NSAID, an over the counter topical analgesic, and a prescription analgesic for forty-four years, yearly lab tests, physical therapy evaluations and physical therapy sessions for forty-four years, as well as various

---

[69] Ex. D at p. 108 (APP_155).
[70] *Id.* at p. 105 (APP_152).
[71] *Id.* at p. 8 (APP_055).

equipment and supplies.[72] Sellars has no support from Mejia's medical records for the opinion that Plaintiff will require lifelong care for all of those services, tests, treatments, and medications. *See Carreon*, 2016 WL 9525670, at *2-3.

44.     Sellars also offer many speculative opinions that Mejia will require "essential services" six times per year for forty-four years without explaining what the "essential services" entail, why they are medically necessary, and which of Mejia's providers recommend it.[73] Likewise, Sellars opined that Mejia would require "vocational evaluation and vocational counseling," despite his report noting that she "is currently able to perform the same types of work-related tasks for the same amount of time as she was prior to the injury."[74]

45.     Sellars' testimony and life care plan will not assist a reasonable juror and fails to bring to the jury more than Mejia's counsel can offer in argument. *See Pipitone*, 288 F.3d at 245; *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d at 1233-34.

### D.     Davenport's Present Value Assessment is Inadmissible because The Life Care Plan is Inadmissible

46.     If Sellars' opinions are inadmissible, then the present value assessment is likewise inadmissible since the present value assessment is based on the unsupported, nominal costs determined in the life care plan.[75]

### VI.     CONCLUSION

47.     Defendants ask the Court to exercise its gatekeeping role under *Daubert* and the Federal Rules of Evidence and exclude Sellars' life care plan and any testimony related to the life care plan.

---

[72] *Id.* at p. 62-63 (APP_109-APP_110), 88 (APP_135), 105 (APP_152), 118 (APP_165), 125 (APP_172).
[73] *Id.* at p. 149 (APP_196).
[74] *Id.* at p. 22 (APP_069), 125 (APP_172).
[75] Ex. B at 44:23-45:1 (APP_012-APP_013).

## VII.   PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendants Panther II Transportation, Inc. and Brian Keith Moorer respectfully request that this Court grant their Motion to Strike, Exclude, or Limit Plaintiff's Life Care Plan and for such further relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

**COOPER & SCULLY, P.C.**

By:    */s/ Jillian H. Ginger*

**WILLIAM F. ALLRED**
State Bar No.: 01104550
Email: William.Allred@cooperscully.com
**CLARISSA A. PRICE**
Texas Bar No. 24082450
Email: Clarissa.Price@cooperscully.com
**JILLIAN H. GINGER**
Texas Bar No. 24137469
Email: Jillian.Ginger@cooperscully.com

Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:   214-712-9500
Facsimile:   214-712-9540

**ATTORNEYS FOR DEFENDANTS
PANTHER II TRANSPORTATION, INC.,
AND BRIAN KEITH MOORER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record pursuant to the Federal Rules of Civil Procedure on this 1st day of May, 2024.

ARNOLD & ITKIN LLP
Jason A. Itkin (jitkin@ArnoldItkin.com)
Caj Boatright (cboatright@ArnoldItkin.com)
Roland Christensen (rchristensen@ArnoldItkin.com)
Trenton A. Shelton (tshelton@ArnoldItkin.com)
6009 Memorial Drive
Houston, Texas 77007
eservice@ArnoldItkin.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Jillian H. Ginger*
**JILLIAN H. GINGER**